UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

MICHAEL GEORGE O'BRIEN,                 :
                                        :CIVIL ACTION NO. 3:13-CV-2085
          Petitioner,                   :
                                        :(JUDGE CONABOY)
          v.                            :(Magistrate Judge Mehalchick)
                                        :
PENNSYLVANIA BOARD OF PROBATION         :
AND PAROLE, et al.,                     :
                                        :
          Respondents.                  :
                                        :
_____

**MEMORANDUM**

Here we consider Magistrate Judge Karoline Mehalchick's Report and Recommendation (Doc. 19) concerning Petitioner Michael George O'Brien's 28 U.S.C. § 2254 petition for habeas corpus in which he claims that the Pennsylvania Board of Probation and Parole incorrectly calculated his maximum date and was without authority to extend his term beyond the October 19, 2007, date originally established (Doc. 1).  Magistrate Judge Mehalchick recommends dismissal of the action based on Petitioner's failure to exhaust his state court remedies.  (Doc. 19 at 10-11.)  After having requested and been granted an extension of time to file objections to the Report and Recommendation (Docs. 20, 21), Petitioner filed his objections on June 19, 2014 (Doc. 22).  Respondents did not file a response to the objections.  The Court requested Respondents to file a supplemental brief by Order of July 17, 2014.  (Doc. 23.) Respondents filed their supplemental brief on July 31, 2014.  (Doc. 24.)  Therefore, this matter is ripe for disposition.

For the reasons discussed below, we adopt the Report and Recommendation as modified.  We conclude this 28 U.S.C. § 2254 petition (Doc. 1) is properly denied.

### I. Background

Respondents set out an extensive background in their Response to Petition for Writ of Habeas Corpus (Doc. 14 at 1-14) and Memorandum in Opposition to Petition for Writ of Habeas Corpus (Doc. 15 at 1-13) and provided extensive supporting documentation (Docs. 14-1, 14-2).  We will not repeat that information here but will summarize portions of Respondents' recitation pertinent to our discussion.

Petitioner is currently serving a five-to-twenty-year sentence for Aggravated Assault based on his 1987 conviction in the Court of Common Pleas of Luzerne County, Pennsylvania.  (Doc. 15 ¶ 1.)  The original minimum and maximum dates for the sentence were set at October 19, 1992, and October 19, 2007.  (*Id.* ¶ 2.)  Petitioner was first paroled on October 19, 1992.  (*Id.* ¶ 3.)  Since that initial parole, Petitioner repeatedly violated conditions of his parole, committed new offenses, was recommitted as a technical and/or convicted parole violator, and ordered to serve backtime[1].  (Doc. 15 ¶¶ 4-48.)

---

[1] "Backtime is the remaining part of a pre-existing judicially imposed sentence that a parole violator is directed to serve before again being eligible to apply for parole on that particular sentence." *Snyder v. Pennsylvania Board of Probation and Parole*, 701 A.2d 635, 636 (Pa. Commw. Ct. 1997).

Petitioner was last released on parole on August 6, 2007, with a controlling maximum date of March 19, 2013. (Doc. 15 ¶ 38.) Thus, at the time of his release on August 6, 2007, Petitioner had 2052 days remaining on his sentence. (Doc. 15 at 19 & n.2.)

Previously Petitioner had received credit for 445 days of time spent at liberty on parole--from April 30, 2001, to September 19, 2001, and from November 17, 2003, to September 15, 2004. (Doc. 15 ¶¶ 25-32.) This time had not been forfeited as of his August 6, 2007, release. (Doc. 24 at 8.)

On January 20, 2009, the Board declared Petitioner delinquent effective January 12, 2009. (Doc. 15 ¶ 39.) On January 21, 2009, he was arrested and detained for violating the change of residence and reporting conditions of his parole. (*Id.* ¶ 40.)

On or about February 3, 2009, Petitioner was arrested by the Wilkes-Barre police department for multiple counts of Arson, Criminal Mischief and related offenses which occurred on December 19, 2008. (Doc. 15 ¶ 45.)

By decision dated March 3, 2009, and recorded on February 25, 2009, the Board recommitted Petitioner to a state correctional institution as a technical parole violator to serve twelve months backtime. (Doc. 15 ¶ 42.)

By decision recorded on January 28, 2010, the Board deleted the parole violation maximum date, indicating it would be added when available pending resolution of Petitioner's new criminal

3

charges.  (Doc. ¶ 44.)

On April 16, 2012, Petitioner pled guilty to Conspiracy to
Reckless Burning or Exploding (F3) and Conspiracy to Commit
Criminal Mischief/Damage to Property Intentional, Reckless or
Negligent (F3) and was sentenced to a term of imprisonment of 11
months, 29 days to 2 years.  (Doc. 15 ¶ 46.)

In a decision recorded on June 14, 2012, the Board recommitted
Petitioner to a state correctional institution as a convicted
parole violator to serve 18 months backtime and recalculated his
parole violation maximum date to August 28, 2018.  (Doc. 15 ¶¶ 48-
49.)  On July 13, 2012, and July 24, 2012, the Board received
administrative appeals filed by Petitioner challenging the
recalculation of the maximum date.  (*Id.* ¶ 50.)

In a decision recorded on August 6, 2012, and mailed on August
7, 2012, the Board modified its action of June 14, 2012, by
changing the parole violation maximum date to November 21, 2017,
and advising Petitioner that he could file a request for
administrative relief with the Board within thirty days if he
wished to appeal the decision.  (Doc. 15 ¶¶ 51, 55.)

On September 7, 2012, the Board mailed a response to
Petitioner regarding his administrative appeals received on July
13, 2012, and July 24, 2012, indicating that his challenge to the
recalculation decision was moot based on the Board's August 6,
2012, recalculation decision.  (Doc. 15 ¶ 52.)

4

On December 13, 2012, Petitioner was refused parole and his parole violation maximum date remained November 21, 2017.  (Doc. 15 ¶ 64.)

On January 22, 2013, the Board received another administrative appeal from Petitioner regarding the November 21, 2017, maximum date.  (Doc. 15 ¶ 53.)

On January 23, 2013, Petitioner filed a Petition for Administrative Review in the Commonwealth Court's appellate jurisdiction.  (Doc. 15 ¶ 60.)

On February 12, 2013, the Commonwealth Court issued an Order stating that the petition for review was quashed as untimely to the extent Petitioner was appealing the Board's decision mailed on September 7, 2012 (finding his  July 13, 2012, and July 24, 2012, appeals moot based on the Board's recalculation of his max date from August 28, 2018, to November 21, 2017).  (Doc. 15 ¶ 61; Doc. 14-2 at 108.)  The Order also stated that to the extent Petitioner was challenging the recalculation of his parole violation maximum date as announced in the decision mailed on August 12, 2012, the appeal was dismissed as premature without prejudice to Petitioner filing a timely appeal once the Board issued a decision on his request for administrative relief.  (Doc. 14-2 at 108.)

On April 16, 2013, the Board received another administrative request for relief from Petitioner challenging the November 21, 2017, maximum date.  (Doc. 15 ¶ 56.)

5

On April 17, 2013, the Board mailed a response to Petitioner concerning the administrative appeal it had received from him on January 22, 2013.  (Doc. 15 ¶ 54; Doc. 14-2 at 91.)  The response stated that because Petitioner objected to the November 17, 2017, maximum sentence date calculation, his request was considered to be a petition for administrative review from the decision mailed on August 7, 2012.  (Doc. 14-2 at 91.)  Because it was not mailed within thirty days of the mailing date of the August 7, 2012, decision, it was untimely, and because Petitioner did not allege sufficient grounds for it to be considered *nunc pro tunc*, the request for review was dismissed as untimely.  (*Id.*)

On May 29, 2013, and June 25, 2013, the Board received administrative requests for relief from Petitioner again challenging the November 21, 2017, maximum date.  (Doc. 15 ¶¶ 56, 58.)

On July 31, 2013, the Board denied Petitioner's April 17, 2013, and May 29, 2013, requests as second or successive and untimely.  (*Id.* ¶ 57.)

On July 1, 2013, Petitioner filed a Petition for Writ of Habeas Corpus in Commonwealth Court's original jurisdiction.  (Doc. 15 at 13.)  On July 8, 2013, Commonwealth Court dismissed the petition for review for lack of original jurisdiction.  (*Id.*)

On August 20, 2013, the Board denied Petitioner's June 25, 2013, request for administrative relief as second or successive.

6

(Doc. 15 ¶ 59; Doc. 14-2 at 101.)  The Board also informed Petitioner that any additional requests for relief from the August 6, 2012, Board decision would not be accepted and he would receive no response from the Board.  (Doc. 14-2 at 101.)

As noted above, Magistrate Judge Mehalchick recommends dismissing this matter based on Petitioner's failure to exhaust his state remedies.  (Doc. 19.)  Petitioner timely filed objections to the Report and Recommendation, asserting that his failure to exhaust should be excused, the Magistrate Judge should have addressed the merits of his claims, and his petition should be granted.  (Doc. 22.)

## II. Discussion

### A. Standard of Review

When a magistrate judge makes a finding or ruling on a motion or issue, his determination should become that of the court unless objections are filed.  *See Thomas v. Arn*, 474 U.S. 140, 150-53 (1985).  When no objections are filed, the district court is required only to review the record for "clear error" prior to accepting a magistrate judge's recommendation.  *See Cruz v. Chater*, 990 F. Supp. 375, 378 (M.D. Pa. 1998).  When objections are filed, the district judge makes a *de novo* review of those portions of the report or specified proposed findings or recommendations to which objection is made.  *See Cippolone v. Liggett Group, Inc.*, 822 F.2d 335, 340 (3d Cir. 1987), *cert. denied*, 484 U.S. 976 (1987).  The *de*

*novo* standard applies only to objections which are both timely and specific.  *Goney v. Clark*, 749 F.2d 5, 6-7 (3d Cir. 1984). Although the review is *de novo*, the court may rely on the magistrate judge's recommendations to the extent it deems proper. *See United States v. Raddatz*, 447 U.S. 667, 675-76 (1980); *Goney*, 749 F. 2d at 7.  The court may accept, reject, or modify, in whole or in part, the findings made by the magistrate judge.  28 U.S.C. § 636(b)(1).

**B.    *Petitioner's Objections***

As noted above, with his objections Petitioner asserts that his failure to exhaust should be excused, the Magistrate Judge should have addressed the merits of his claims, and his petition should be granted.  (Doc. 22.)  Specifically, Petitioner argues the Board is responsible for the procedural default.  (*Id.* at 7.) Regarding the merits of his claims, Petitioner asserts: 1) the Board lacked subject matter jurisdiction to extend his sentence past the original October 19, 2007, maximum date (*id.* at 2-4); 2) the application of 61 Pa. C.S. § 6138(a)(2) denying credit for time at liberty on parole violates the Ex Post Facto Clause (claiming its predecessor § 21(a) was declared unconstitutional in *Banks v. Cain*, 28 A.2d 897 (1942)) (*id.* at 4); and 3) the Board's extension of his maximum date violates double jeopardy (*id.* at 5-7).

**1.    *Exhaustion***

Petitioner does not argue that he exhausted his claims in

state court.  Rather, he asserts that the Pennsylvania Board of Probation and Parole is responsible for the procedural default of his claims.  (Doc. 22 at 7-9.)  This argument is without merit in that the Report and Recommendation properly addresses the exhaustion issue and Magistrate Judge Mehalchick is correct that Petitioner has procedurally defaulted his claims and presented no basis upon which the Court can excuse his default.  (*See* Doc. 19 at 6-10.)

    "It is axiomatic that a federal habeas court may not grant a petition for a writ of habeas corpus filed by a person incarcerated from the judgment of a state court unless the petitioner has first exhausted the remedies available in the state courts."  *Lambert v. Blackwell*, 134 F.3d 506, 513 (3d Cir. 1997) (citing 28 U.S.C. § 2254 (b)(1)(A)).  Specifically, a state prisoner "must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review procedures."  *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).  A federal habeas claim "must have been 'fairly presented' to the state courts, i.e., it must be the substantial equivalent of that presented to the state courts."  *Lambert*, 134 F.3d at 513.  The petitioner bears the burden of proving exhaustion of all available state remedies.  *Id.* (citing *Toulson v. Beyer*, 987 F.2d 984, 987 (1993)).

    To properly exhaust a claim involving a determination made by

the Pennsylvania Board of Probation and Parole, a petitioner must first seek administrative review with the Board pursuant to 37 Pa. C.S. § 73.1.  The Petitioner must then seek review in the Commonwealth Court, 42 Pa. C.S. § 763(a), and the Pennsylvania Supreme Court, *Williams v. Wynder*, 232 F. App'x 177, 180 (3d Cir. 2007) (not precedential)[2].

Here there is no dispute that Petitioner did not exhaust his state court remedies.  His one appeal to the Commonwealth Court was dismissed as untimely to the extent he sought review of the Board's decision mailed on September 7, 2012; it was dismissed as premature without prejudice to filing a timely appeal once the Board issued a decision on his request for administrative relief which was then pending before the Board.  (Doc. 14-2 at 108.)  He did not appeal the Commonwealth Court's decision to the Pennsylvania Supreme Court.  Nor did Petitioner seek review of the Board's subsequent denial of his request for administrative relief.

Once a court determines that a petitioner has not exhausted

---

[2]  Thought Petitioner argues it is "legally incorrect" that exhaustion required him to seek review in the Supreme Court of Pennsylvania (Doc. 22 at 6-7), Petitioner is mistaken.  *Williams* concluded that the Pennsylvania Supreme Court's Order 218 which declared that "in all appeals from criminal convictions or post-conviction relief matters, a litigant shall not be required to petition for rehearing or allowance of appeal following an adverse decision by the Superior Court in order to be deemed to have exhausted all available state remedies respecting a claim of error," 232 F. App'x at 179, did not apply to appeals from decisions issued by the Commonwealth Court and involving challenges to actions by the Parole Board, *id.* at 180.

his federal habeas claims in state court, the reviewing court must

determine whether the failure to do so may be excused.

> In all cases in which a state prisoner has
> defaulted his federal claims in state court
> pursuant to an independent and adequate state
> procedural rule, federal habeas review of the
> claims is barred unless the prisoner can
> demonstrate cause for the default and actual
> prejudice as a result of the alleged
> violation of federal law, or demonstrate that
> failure to consider the claims will result in
> a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722 at 750; *see also Johnson v.*

*Folino*, 705 F.3d 117, 127 (3d Cir. 2013).  To show cause and

prejudice, "a petitioner must demonstrate some objective factor

external to the defense that prevented compliance with the state's

procedural requirements."  *Coleman*, 501 U.S. at 753.  To show a

fundamental miscarriage of justice, a petitioner must demonstrate

that he is actually innocent of the crime by presenting new

evidence of innocence.  *Keller v. Larkins*, 251 F.3d 408, 415-16 (3d

Cir. 2001) (citing *McCleskey v. Zant*, 499 U.S. 467,494 (1991);

*Schlup v. Delo*, 513 U.S. 298, 316 (1995)).

Petitioner's attempt to show "cause" for his default is

unavailing.  Petitioner seems to assert that the cause for his

default was that he was "under the belief" that the Board had

credited him with the appropriate number of days, that belief was

mistaken, and the Board granting him partial relief on his request

for administrative review of the maximum date established by the

Board amounts to government interference which impeded the

presentation of his claim.  (Doc. 22 at 8.)

If a petitioner's failure to appeal an adverse ruling is unknowing, that fact is irrelevant in establishing cause.  *Cristin v. Brennan*, 281 F.3d 404, 420 (3d Cir. 2002).  *Cristin* explains that

> [e]xamples of "cause" that are "external to the defense" include interference by the state with the conduct of a defense or the previous unavailability of the factual or legal basis of a claim. [*Murray v. Carrier*, 477 U.S. 478, 488, 106 S. Ct. 2639, 91 L. Ed. 2d 397 (1986).]  Generally, "cause" cannot be based on the mere inadvertence of the petitioner or petitioner's counsel to take an appeal.  "[T]he mere fact that counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not constitute cause of a procedural default."  *Id.* at 486, 106 S. Ct. 2639.  Indeed, in *Coleman v. Thompson*, 501 U.S. 722, 111 S. Ct. 2546, 115 L. Ed. 2d 640 (1991), the Court addressed the very question presented by this case--the effect of a litigant's inadvertent failure to take a timely appeal in a state collateral proceeding.  The Court concluded that an "ignorant or inadvertent procedural default" does not satisfy the cause element of cause and prejudice.  *Coleman*, 501 U.S. at 752, 111 S. Ct. 2546.  Thus, it is immaterial whether [the petitioner] unwittingly failed to appeal the denial of his PCRA petition.

*Cristin*, 281 F.3d at 420.  These considerations apply when the underlying decision is that of the Pennylvania Board of Probation and Parole.  *See*, *e.g.*, *Barnhart v. Kyler*, 318 F. Supp. 2d 250 (M.D. Pa. 2004).

Petitioner's claim of government interference is not

substantiated by the record.  Petitioner's alleged confusion is not supported by evidence which suggests that he was misled or received incorrect information regarding an appeal period from an attorney or representative of the Board or judiciary.  Rather, in his request for administrative review dated July 11, 2012, Petitioner requested review of the Board's decision in which his parole violation maximum date was set at August 28, 2018, asserting that his maximum date should be May 15, 2017.  (Doc. 14-2 at 64.)  Thus, when the August 6, 2012, Board decision (Doc. 14-2 at 74) set the maximum parole date at November 21, 2017 (Doc. 14-2 at 74), Petitioner knew that he had not received the relief requested.  Importantly, the same Notice of Board Decision informed him that he had thirty days from the date of the order to appeal the Board's decision.  (Doc. 14-2 at 74.)  Petitioner did not do so.  If Petitioner was confused about his review and/or appeal rights and obligations related to his many attempts to have his parole violation maximum date changed, such confusion does not give rise to cause for his procedural default.

Petitioner also argues that "a miscarriage of justice has been imposed upon Petitioner by the Board" because the Board extended his term beyond the October 19, 2007, maximum and he has been illegally held since that time.  (Doc. 22 at 7.)   This argument is without merit.

The miscarriage of justice exception is very narrow.  *Schlup*

13

*v. Delo*, 513 U.S. 298, 315 (1995) (citing *McCleskey v. Zant*, 499 U.S. 467, 494 (1991)).

> To establish a miscarriage of justice excusing a procedural default, a habeas petitioner must "persuade[] the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Schlup v. Delo*, 513 U.S. 298, 329, 115 S. Ct. 851, 130 L. Ed. 2d 808 (1995).  The miscarriage of justice inquiry is thus concerned with "actual innocence."  *Sawyer v. Whitley*, 505 U.S. 333, 339, 112 S. Ct. 2514, 120 L. Ed. 2d 269 (1992).

*Cristin*, 281 F.3d at 420.  Petitioner has not presented any evidence that would allow the Court to find that Petitioner is innocent of the crime for which he was convicted.

A petitioner's attempt to argue that he was "actually innocent" not of the underlying crime but of the sentence imposed was rejected in *Cristin*.  281 F.3d at 421 (citing *Sawyer v. Whitley*, 505 U.S. 333, 347 (1992)).  The Third Circuit Court of Appeals concluded that "precedent on this issue . . . does not support the manner in which Cristin has divorced actual innocence of the crime from actual innocence of the sentence.  The latter has no application to this case."  *Id.*  *Cristin* noted that, though applicable in capital sentencings pursuant to *Sawyer*, the courts of appeals have split on whether the miscarriage of justice rationale can extend to non-capital sentencings.  *Id.* (listing cases).  The Circuit Court concluded: "We need not venture into the thicket of whether *Sawyer's* rationale applies with equal validity to non-

capital sentencing, because the 'actual innocence' rationale remains firmly rooted in the testing of allegedly erroneous factual determinations, whether it be factual determinations of guilt at the conviction stage or factual determinations underlying eligibility for the death penalty" and the court "had no basis for concluding that some factual finding at sentencing was erroneous." *Id.* at 422 (citing *Sawyer*, 505 U.S. at 339; *Bousley*, 523 U.S. at 623).

The United States Supreme Court declined to extend the actual innocence exception to non-capital sentences in *Dretke v. Haley*, 541 U.S. 386, 393 (2004).  As discussed in *Williams v. Diguglielmo*, Civil Action No. 08-4160, 2010 WL 2011587, at *4 (E.D. Pa. May 20, 2010), the Courts of Appeal that have decided this issue are split.

> [T]wo of the three circuits that apply the exception to non-capital cases limit its application to eligibility for sentencing as a career or habitual offender.  *Compare Spence v. Superintendent, Great Meadow Corr. Facility*, 219 F.3d 162, 171 (2d Cir. 2000) (stating that "there is no reason why the actual innocence exception should not apply to noncapital sentencing procedures"); *Haley v. Cockrell*, 306 F.3d 257, 264 (5th Cir. 2002) (holding that "the actual innocence exception applies to noncapital sentencing procedures involving a career or habitual felony offender"), *vacated and remanded on other grounds, Dretke*, 541 U.S. 386 . . . ; and *United States v. Mikalajunas*, 186 F.3d 490, 495 (4th Cir. 1999) (determining that the actual innocence exception "applies in non-capital sentencing only in the context of eligibility for application of a career offender or other habitual offender guideline provision" (discussing *United States v.*

15

> *Maybeck*, 23 F.3d 888, 892-94 (4th Cir.
> 1994))); *with Embrey v. Hershberger*, 131 F.3d
> 739, 740 (8th Cir. 1997) ([W]e think that
> *Sawyer*, in terms, applies only to the
> sentencing phase of death cases."); and *Reid
> v. Oklahoma*, 101 F.3d 628, 630 (10th Cir.
> 1996) (stating that "'[a] person cannot be
> actually innocent of a noncapital sentence'"
> (quoting *United States v. Richards*, 5 F.3d
> 1369, 1371 (10th Cir. 1993))).

2010 WL 2011587, at *4.

Here, as in *Williams*, Petitioner has presented no new evidence that he is actually innocent of his sentence. Therefore, even if the Third Circuit were to extend the exception, he would not be eligible for it.

Because Petitioner has presented no basis upon which the Court could excuse his procedural default, Petitioner's failure to exhaust his claims requires dismissal of his federal habeas action. Thus, we reject Petitioner's objection to the Magistrate Judge's conclusion that this action is properly dismissed with prejudice for failure to exhaust.

## 2.  *Merits Analysis*

Petitioner objects to the Magistrate Judge's failure to address the substance of his claims. This objection is without merit in that Magistrate Judge Mehalchick properly concluded that dismissal of his claims was warranted on a procedural basis. However, because the Court may deny a petition on the merits notwithstanding a petitioner's failure to exhaust his claims, 28 U.S.C. § 2254(b)(2), we will briefly review Petitioner's objections

16

related to alleged constitutional violations.

Petitioner's claims and objections regarding his sentence are twofold: the Board had no authority to extend the term for his 1987 aggravated assault conviction beyond the October 19, 2007, maximum date originally established and in doing so the Board violated his constitutional rights; and Petitioner has not received proper credit for time served.  (Docs. 1, 22.)

Petitioner's assertion that the extension of his maximum date beyond October 19, 2007, violates constitutional principles of separation of powers, due process and double jeapardy as well as the Ex Post Facto Clause is clearly without merit.  Although an inmate has constitutionally protected interests in being released upon expiration of his sentence, *see*, *e.g.*, *Sample v. Dieks*, 885 F.2d 1099 (3d Cir. 1989), here Petitioner has presented no evidence that he is being held beyond his release date.

The flaw in Petitioner's assertion that his five-to- twenty-year sentence ended on October 19, 2007, is that his sentence required him to serve a maximum of twenty years or 7,300 days. *See*, *e.g.*, *Handy v. Pennsylvania Board of Probation and Parole*, Civil Action No. 13-1741, 2013 WL 6578926, at *9 (E.D. Pa. Dec. 16, 2013); *see also Corbett v. Pennsylvania Dep't of Corrections*, Civil Action No. 09-174, 2011 WL 4704194, at *6-8 (W. D. Pa. Aug. 25, 2011).  If Petitioner had not violated his parole, thereby losing credit for his street time, he would have served the 7,300 days on

October 19, 2007.  However, due to his numerous violations, Petitioner lost credit for time spent at liberty on parole and the service of the 7,300 days was NOT complete as of the originally established maximum term of October 19, 2007.  Time served on parole cannot be equated with time served in an institution.  *Young v. Pennsylvania Board of Probation and Parole*, 409 A.2d 843, 846 (Pa. 1979).  "'Mere lapse of time without imprisonment . . . does not constitute service of a sentence.'"  *Id.* (quoting *Anderson v. Corall*, 263 U.S. 193, 196 (1923)).  Thus, the Board did not act improperly in extending Petitioner's maximum date in that it did not add any additional time to his sentence, it simply determined (by applying relevant Pennsylvania law including deducting credit for time spent on parole after Petitioner was determined to be a convicted parole violator[3]) when the sentence initially imposed would be satisfied.  The Third Circuit Court of Appeals found that no federal constitutional question was involved when the Board took similar action in *United States ex rel. Heacock v. Myers*, 367 F.2d

---

[3]  Both the statutory provision in effect at the time of Petitioner's 1987 conviction (61 Pa. C.S. § 331.21a(a)) and at the time of the Board's calculation at issue (61 Pa. C.S. § 7138(a)(2)) provide that the parolee "shall be reentered to serve the remainder of the term which [he] would have been compelled to serve" had parole not been granted and, with certain exceptions, he "shall be given no credit for time at liberty on parole."  "The 'remainder of the term' refers to the portion of the sentence actually left on the date of the release on parole . . . and not on the date of violation of the parole."  *Commonwealth of Pennsylvania ex rel. Haun v. Cavell*, 154 A.2d 257, 260 (Pa. Super. Ct. 1959) (citing *Commonwealth of Pennsylvania ex rel. Meinzer v. Smith*, 180 A. 179, 351 (Pa. Super. Ct. 1935)).

18

583 (3d Cir. 1966) (expressing "complete accord" and affirming opinion of district court in *United States ex rel. Heacock v. Myers*, 251 F. Supp. 773, 774 (E.D. Pa. 1966)); *see also Choice v. Pennsylvania Board of Parole*, 448 F. Supp. 294, 298 (M.D. Pa. 1977)[4]).

Because the Board did not add any additional time to Petitioner's sentence, his double jeopardy argument is without merit. *See*, *e.g.*, *Handy*, 2013 WL 6578296, at *11; *see also Markel v. Pennsylvania Board of Probation and Parole*, Civil No. 1:CV-12-1691, 2014 WL 1818076, at *5 (M.D. Pa. May 7, 2014).

Petitioner's argument that the Board's extension of his term violates the Ex Post Facto Clause (*see*, *e.g.*, Doc. 22 at 4) is

---

[4]  *Choice* rejected claims similar to those lodged by Petitioner.

> Petitioner contends in taking away his 'street time' the Board unlawfully extended his maximum sentence in violation of his rights under the Fifth and Fourteenth Amendments. [61 Pa. C.S. § 331.21a(a)], directing the Pennsylvania Board of Parole to give a recommitted, convicted parole violator no credit for time spent on liberty while on parole, has withstood numerous constitutional challenges in the federal courts.  Section 331.21a(a) has been held not to violate the due process and equal protection guarantees of the federal constitution, and not to violate the constitutional prohibitions against double jeopardy, bills of attainder, cruel and unusual punishment or ex post facto laws.

448 F. Supp. at 298 (footnotes omitted) (listing cases).

without merit in that both the statute in effect at the time of his conviction, 61 Pa. C.S. § 331.21a(a), and the statute controlling at the time of the Board's 2012 establishment of his November 21, 2017, maximum date, 61 Pa. C.S. § 6138(a)(2), provide for a convicted parole violator's loss of credit for street time.[5]

Petitioner's contention that the Pennsylvania Supreme Court declared the relevant provision unconstitutional in *Commonwealth ex rel. Banks v. Cain*, 28 A.2d 897 (Pa. 1942), (Doc. 22 at 4) is incorrect. Relying in part on *Banks* and *Ohodnicki v. Pennsylvania Board of Parole*, 211 A.2d 433 (Pa. 1965), the Supreme Court of Pennsylvania concluded that the statutory provision allowing the Board to withdraw credit for time spent at liberty on parole does not constitute an impermissible infringement on the judicial power by either a legislative or administrative body. *Young*, 409 A.2d at 846-48. Importantly, the Third Circuit Court of Appeals has found that Pennsylvania's parole statute is constitutional. *See*, *e.g.*, *United States ex. rel. Lawson v. Cavell*, 425 F.2d 1350, 1352 (3d Cir. 1970) (citing *United States ex rel. Gomori v. Maroney*, 196 F.

---

[5] "'Street time,' or the period spent on parole before the criminal violation, is not credited to the sentence to be served upon recommitment.'" *Heacock*, 251 F. Supp. at 774 (citing *Commonwealth ex rel. O'Leary v. Ashe*, 32 A.2d 36 (1943)).  61 Pa. C.S. § 331.21a(a) "mandates that sentences for crimes committed on parole must be served consecutively with time remaining on original sentences and thus prohibits courts of this Commonwealth and the Board from imposing concurrent sentencing." *Vance v. Pennsylvania Board of Probation and Parole*, 741 A.2d 838, 840 (Pa. Commw. Ct. 1999).

Supp. 190 (D.C. Pa. 1961)).  Thus, contrary to Petitioner's
assertions, neither separation of powers nor ex post facto
considerations support his claimed constitutional violations.

Finally, Petitioner's challenge to the accuracy of the Board's
calculation based on the claimed failure to give him credit for all
time served (Doc. 22 at 7-8) is also without merit.  Because the
Board's maximum date calculation is supported by the evidence,
Petition would not be entitled to relief even if he had exhausted
his state remedies.

Petitioner was last released on parole on August 6, 2007, with
a controlling maximum date of March 19, 2013.  (Doc. 15 ¶ 38.)
Thus, at the time of his release on August 6, 2007, Petitioner had
2052 days remaining on his sentence.  (Doc. 15 at 19 & n.2.)

Previously Petitioner had received credit for 445 days of time
spent at liberty on parole--from April 30, 2001, to September 19,
2001, and from November 17, 2003, to September 15, 2004.  (Doc. 15
¶¶ 25-32.)  This time had not been forfeited as of his August 6,
2007, release.  (Doc. 24 at 8-9.)  With Petitioner's designation as
a convicted parole violator by decision recorded on June 14, 2012
(Doc. 15 ¶ 48), he forfeited the 445 days.  (Doc. 24 at 8-9.)
Therefore, the time remaining on his five-to-twenty-year sentence
was 2,497 days.  (*Id.* at 9.)  Petitioner received credit for the
time he was incarcerated which was not credited to his sentence on
the 2009 criminal charges, i.e., from January 21, 2009, to April

21

18, 2010, for a total of 452 days.  (*See* Doc. 15 at 22; Doc. 24 at 11.)  Petitioner was determined to have served his new sentence (728 days) from April 18, 2010, to April 16, 2012. (Doc. 15 at 22.) Thus, Petitioner had 2045 days remaining on his original sentence when he became available to serve that sentence on April 16, 2012, yielding a new maximum date of November 21, 2017.[6] (Doc. 24 at 12.) As this is the maximum date under which Petitioner is currently held, Petitioner's claimed calculation error is not supported.

### 3.   *Certificate of Appealability*

We concur with Magistrate Judge Mehalchick that there is no basis for the issuance of a certificate of appealability.  Pursuant to 28 U.S.C. § 2253(c)(1)(A), an appeal from a final § 2254 order may not be taken unless a circuit judge or judge issues a certificate of appealability.  Section 2253(c)(2) provides that the certificate may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  *Miller-El v. Cockrell*, 537 U.S. 322 (2003).  Based on the legal authority set out above and the substance of Petitioner's

---

[6]  Petitioner's correspondence dated July 27, 2014 (Doc. 25) is not a proper filing and raises no issues of merit.

claimed constitutional violations, jurists of reason could not disagree with the court's conclusion that Petitioner has not asserted any viable constitutional claim.  Therefore, no certificate of appealability will issue.

### III. Conclusion

For the reasons discussed above, we adopt the Report and Recommendation (Doc. 19) as modified, deny Petitioner's 28 U.S.C. § 2254 petition, and conclude there is no basis for the issuance of a certificate of appealability.  An appropriate Order is entered simultaneously with this Memorandum.


                                    S/Richard P. Conaboy
 August 4, 2014                     RICHARD P. CONABOY
                                    United States District Judge